788 So.2d 694 (2001)
STATE of Louisiana
v.
Eugene BROWN.
No. 01-KA-41.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2001.
*696 Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, Attorney for Appellant Eugene Brown.
*697 Paul D. Connick, Jr., District Attorney 24th Judicial District, Parish of Jefferson, State of Louisiana, Churita H. Hansell counsel of Record on Appeal, Terry M. Boudreauxappellate Counsel, Donald A. Rowan, Jr.Trial Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee State of Louisiana.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
Defendant, Eugene Brown, appeals from his jury conviction of simple rape, a violation of La. R.S. 14:43, and from his sentence of ten years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[1] We affirm the conviction, vacate the sentence and remand.
On the evening and early morning of December 4th and 5th, 1998, Pamela Pierce (Pierce) arrived at the Pair of Dice lounge at about 10:00 or 11:00 p.m., where, to her recollection, she drank about eight beers. Around 2:00 or 2:30 a.m., she left the lounge to give someone a ride to Kenner and then go home.
Although Pierce had a vague memory of the events leading up to the incident, she recalled that Williams was a passenger in her car, when she stopped her car on a dead end street somewhere in Kenner.[2] Williams got out of the car and told her to get out of the car. After Pierce exited her vehicle, she followed Williams up an embankment.[3] Pierce testified that, when she started up the embankment, she became nervous and started to turn around, but Williams grabbed her arm, pushed her down to the ground and ordered her to shut up. She tried to run away once, but Williams punched her in the face. Williams, who was armed with a knife, held it to Pierce's throat and threatened to kill her if she yelled. Williams pulled off her shoes and pants and raped her.[4] Then, he ordered Pierce to get dressed and took her to a nearby shed, where she was crying and bleeding from a wound to her forehead.
Williams ordered Pierce to go into the shed, where she saw the Defendant standing in his underwear. Pierce testified that Williams ordered her to disrobe and ordered her and the Defendant to get into the bed. While Williams was still in the room, the Defendant began raping her. After Williams left the shed, she begged the Defendant to help her and he stopped raping her.[5] They then got dressed.
At first, Pierce stated that the Defendant told her that he would try to help her. She later said that she did not think that he had helped her. After Pierce and the Defendant left the shed, she noticed that Williams was in her car. Williams and the Defendant exchanged words and Williams *698 told Pierce to get into the car, which she did. Williams then drove away. When they reached a light at Williams Boulevard and -10, Pierce jumped out. She ran and hid "underneath the bridge." A passing motorist alerted the police.
Officer Tommy Powell of the Kenner Police Department received a call while he was on routine patrol and found Pierce in the 3000 block of Williams Boulevard. He testified that she had a laceration on her forehead and was crying hysterically when he arrived. After an initial interview with Pierce, he took her to the Kenner Lockup, where she met with Detective Mike Jackson.
Detective Jackson interviewed Pierce between 6:00 and 7:00 a.m., noted that she smelled strongly of alcohol, and documented her injuries. Then Detective Jackson took Pierce to Lakeside Hospital where Dr. Vernon Carriere, a gynecologist, performed a rape examination.
Dr. Carriere testified that Pierce was very upset and was crying when she arrived at the hospital. He observed a cut over her right eye, bruising of her left cheek and bruising and abrasions on her left arm and right elbow. According to Dr. Carriere, Pierce's pelvic examination revealed no trauma to the vaginal area, but he noted that trauma is not present in every rape. However, the doctor did observe erythema, or redness, in the rectum, which is compatible with attempted anal penetration. Dr. Carriere's exam did not reveal motile, or moving, sperm.
During the morning of December 7, 1998, Detective Jackson took Pierce's statement in which she described her attackers. Later that day, with her help, Detective Jackson found the location of the attack. That afternoon, Detective Jackson returned to the location and approached the Defendant who volunteered to give a statement.
In his statement, the Defendant did not admit that he had sex with the woman that Williams brought to his house. He did state that she was scared and crying when she arrived. He also claimed that he told her that "she didn't have to do this" but, to make Williams happy, she pretended to perform oral sex on the Defendant. Then the two pretended to have sexual intercourse until Williams left the room. After that, she told him that Williams raped her and he noticed that she had a cut on her head, which had not been there earlier.
On December 8, 1998, Detective Jackson prepared a photographic lineup, presented it to Pierce, and she identified the Defendant as the man who had raped her in the shed. At trial, Pierce again identified the Defendant.
According to the Defendant's testimony, on the night of the incident, he and another friend were talking in his house when his cousin, Williams, knocked on his door looking for drugs or money. According to the Defendant, Williams said he had a white woman in the car who "wanted drugs to have sex." (R., p. 273). The Defendant testified that he and his friend each gave Williams five dollars and that the Defendant went with Williams and the woman to buy some drugs. However, they were unsuccessful. When they returned to the Defendant's house, he went inside, while the woman and Williams remained in the car.
The Defendant testified that, about 45 minutes later, Williams knocked on his door again and entered the house with the woman. The Defendant recalled that the woman "was drunk and glassy-eyed, like if she was doing drugs or something, before they came. I really wasn't sure, but I knew she was drunk, I could smell the alcohol." (R., p. 275). Williams then *699 asked the Defendant if he wanted to have sex with the woman. The Defendant declined at first. However, Williams told the woman to remove her pants, which she started to do. The Defendant claimed he told her not to remove her pants, but "Finally she took off her pants and got in the bed, and I had sex with her." (R., pp. 273, 284).
The Defendant corroborated Pierce's account that, after Williams left the house, she started to cry and told him that Williams had raped her. He testified that after he and Pierce dressed and exited the shed, he confronted Williams, who stated that the woman was lying because "she wanted it, on the ground." (R., p. 274). The Defendant said that Williams then cursed at the woman, told her to get in the car, and drove off. After that, the Defendant went back to his house, washed himself and changed his underwear and the bed sheets.
The Defendant claimed that he had sex with the woman because he was afraid of Williams. However, he also admitted that he did not have to have sex with her. The Defendant denied that Pierce was crying when she entered his house. He also claimed that the statement that Detective Jackson read to the jury was inaccurate in several areas. He also admitted that he had a felony theft conviction and a marijuana conviction.
On appeal, the Defendant claims that the evidence was insufficient to convict him of simple rape.[6] He also contends that the trial judge erred in failing to grant a mistrial when "other crimes" evidence was improperly admitted. The Defendant further contends that the sentence is excessive.
The Defendant argues that the evidence was insufficient because the only evidence against him was the uncorroborated and inconsistent testimony of Pierce, who was drunk on the night of the incident. The Defendant maintains that there was no scientific evidence that a rape occurred, no evidence of vaginal trauma, and no evidence of motile sperm.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722, (1998); State v. Barnes, 98-932 (La.App. 5th Cir. 2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099.
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Barnes, 729 So.2d at 46. A reviewing court is required to consider the whole record and determine whether a *700 rational trier of fact would have found guilt beyond a reasonable doubt. Id.
Rape is "[T]he act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La. R.S. 14:41A. "Emission is not necessary and any sexual penetration, vaginal or anal, however, slight is sufficient to complete the crime." La. R.S. 14:41B.
Simple rape is defined by La. R.S. 14:43 as:
A. Simple rape is a rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of a victim who is not the spouse of the offender because it is committed under any one or more of the following circumstances:
(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause, other than the administration by the offender, and without the knowledge of the victim, of any narcotic or anesthetic agent or other controlled dangerous substance and the offender knew or should have known of the victim's incapacity.
(2) When the victim is incapable, through unsoundness of mind, whether temporary or permanent, of understanding the nature of the act and the offender knew or should have known of the victim's incapacity.
(3) When the female victim submits under the belief that the person committing the act is her husband and such belief is intentionally induced by any artifice, pretense, or concealment practiced by the offender.
A defendant may be convicted of simple rape when the victim's capacity to resist was negated by an abnormal condition or state of mind produced by alcohol consumption. State v. Porter, 93-1106 (La.7/5/94), 639 So.2d 1137, 1143. In Porter, the evidence showed that the victim had consumed alcohol and that she had an alcohol-influenced state of mind. Although the victim denied excessive drinking and recalled the events of the ordeal, the Louisiana Supreme Court held that a reasonable juror could have concluded that the state proved the essential elements of simple rape.
In this case, Pierce testified that she drank about eight beers over about a three or four hour period on the night of this incident and that she did not know the Defendant prior to this incident. She stated that the Defendant fully entered her vaginally, that she did not voluntarily have sex him, and that she was afraid to refuse because she feared Williams, who had already hit her. The Defendant testified that he knew that she was drunk because she looked glassy-eyed and she smelled like alcohol. He also admitted that he vaginally penetrated her.
The Defendant, however, argues that Pierce's testimony was inconsistent, and thus, not credible. He points out that, during the rape examination, Pierce told the attendant that there were two men in her car and that she was raped on the embankment by the two men. This was contradictory to her statement to the police and her trial testimony, where she stated there was only one man in her car and that the man raped her on the embankment while another man raped her in a shed. In addition, the Defendant attacks Pierce's vague recollection of events leading up to the rape.
It is well established that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, *701 even where the state fails to introduce physical evidence to substantiate the commission of the offense. State v. Hotoph, 99-243 (La.App. 5th Cir. 11/10/99), 750 So.2d 1036, 1045, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062, writ denied, 00-0150 (La.6/30/00), 756 So.2d 1066; State v. Hawkins, 99-217 (La.App. 5th Cir. 7/2/99), 740 So.2d 768, 769; State v. Hubbard, 97-916 (La.App. 5th Cir. 1/27/98), 708 So.2d 1099, 1104, writ denied, 98-0643 (La.8/28/98), 723 So.2d 415.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Hotoph, 750 So.2d at 1045. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. Id. The credibility of witnesses will not be reweighed on appeal. Id. "[T]he Jackson standard does not serve as a vehicle for a reviewing court to second-guess the rational credibility determinations of the fact finder at trial." State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293.
Furthermore,
[w]hen a witness is impeached, this simply means the jury, as the trier of fact, is presented with evidence which it could consider and weigh in determining the credibility, or believability, of a witness. Simply because the witness may have been impeached by prior inconsistent statements does not mean that the jury is prohibited from believing anything said by the witness. The inconsistencies in the witness's statements are one of any number of factors the jury weighs in determining whether or not to believe a witness's trial testimony.
State v. Hotoph, 750 So.2d at 1045 (quoting State v. Bender, 598 So.2d 629 (La.App. 3rd Cir.1992)), writ denied, 605 So.2d 1125 (La.1992).
In this case, Pierce was cross-examined by defense counsel regarding the various inconsistencies in her account of the incident. The evidence showed that she had consumed about eight beers. In addition, she and the Defendant testified that the Defendant vaginally penetrated her. She testified that it was done without her consent. The jury heard Pierce's testimony and the Defendant's testimony and found her story credible. We will not second-guess that credibility finding. Thus, we find that the facts thus presented were sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that the Defendant committed simple rape.
In his second assignment of error, Defendant argues that the trial judge erroneously denied a mistrial when the State asked him a detail about his prior theft conviction.[7]
La C.E. art. 404B(1) provides:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by *702 the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding....
In addition, La.C.E. art. 609.1 governs an attack on a witness' credibility through evidence of a criminal conviction and states in part:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury....
On direct examination, defense counsel asked the Defendant about prior convictions and the Defendant responded that he had one previous felony theft conviction and one misdemeanor marijuana conviction. He also testified that he had sexual relations with the victim at Williams' command. In reference to Williams, who was tried separately, the Defendant was asked on direct examination, "Were you afraid of him?" Defendant responded, "Yeah, I didn't know what state of mind he was in at the time." (R., p. 276). He testified that he was worried about Williams' state of mind because Williams "does bad things." (R., p. 276).
Immediately after this line of questioning, the Assistant District Attorney on cross-examination asked, "Mr. Brown, who was your co-defendant on that other case that you pled guilty to?"
Defense counsel objected, after which a bench conference was held. During the bench conference, the following exchange occurred:
MR. ROWAN [ASSISTANT DISTRICT ATTORNEY]:
He just indicated on direct examination that hehis state of mind, that this man he was afraid of, and he was trying to portray to this jury that he didn't do this, he was ordered to do it, and he participated in it, and I just wanted to show the jury if that's the case, he certainly didn't do it in 1996 when he and the other guy [Arthur Williams] stole that equipment from that woman.
MR. NOLTING [DEFENSE ATTORNEY]:
Your Honor, we never had any Prieur hearing, and I requested Prieur notice, about him going into the facts of the case.
MR. ROWAN:
He pled guilty to the
MR. NOLTING:

*703 It has everything to do with him putting on whether or
not the other fellow was guilty.
THE COURT:
It isn't a question of whether he's guilty, he's just saying who the participant was.
MR. NOLTING:
Well, that still requires proof.
THE COURT:
I'm going to allow it.
MR. NOLTING:
Note my objection for the record.
THE COURT:
Just for that limited purpose.
MR. NOLTING:
And I would request a mistrial based on that.
THE COURT:
Denied.
MR. NOLTING:
Note my objection.
After the bench conference, the Prosecutor proceeded:
MR. ROWAN:
Who was the other participant in that case that you pled guilty to?
DEFENDANT:
Arthur Williams, sir.
Q: The same Arthur Williams in this case?
A: Yes, sir.
Q: You're not afraid of Arthur, are you?
A: To a certain extent.
Q: Really?
A: Yeah.
Q: Well, you weren't afraid of him in 1996, were you?
A: In 1996 he haven't [sic] threatened me.
Q: Oh, it's just recently that he's threatened you?
A: Yes, sir.
(R., pp. 278-279).
Defendant admitted the conviction on direct examination and therefore, the details of the offense were not generally admissible. However, he also testified that he was afraid of Williams, thus, putting at issue his state of mind in the context of the nature of his relationship with Williams. To impeach the Defendant's testimony that he raped Pierce because he was afraid of Williams, the prosecutor asked the name of the Defendant's accomplice in his previous conviction. Because the information sought was important to rebut the Defendant's excuse for his action in raping Pierce, the probative value of the exchange outweighed the danger of unfair prejudice, confusion of the issues, or misleading the jury in this case. Thus, we find that the single detail relative to Williams' participation as the Defendant's accomplice in the previous crime was admissible under La.C.E. 609.1C(3).
In addition, even if the admission were erroneous, it was harmless error. See: State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-102. The analysis for determining harmless error is whether the verdict actually rendered in this case was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 278-279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), on remand, 623 So.2d 1315 (La.1993). In light of the testimony offered by Pierce and Detective Jackson at trial, the admission was harmless error since the jury surely could have convicted the Defendant through Pierce's testimony about the rape and her identification of him as her assailant. Thus, the trial judge did not err in admitting the detail related to the Defendant's accomplice in the previous conviction.
*704 Defendant next argues that his sentence is excessive.
Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is generally considered to be excessive if it is grossly disproportionate to the offense or imposes needless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Bowers, 99-416 (La.App. 5th Cir. 9/28/99), 746 So.2d 82, 85.
A reviewing court will not set aside a sentence as excessive, if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); State v. Bowers, 746 So.2d at 85. Although, in determining a sentence, the trial judge must consider the sentencing guidelines set forth by La. C.Cr.P. art. 894 and state the reasons for the sentence, if the record contains an adequate factual basis for the sentence, the trial judge's failure to articulate every circumstance listed in La.C.Cr.P. art. 894.1 will not require a remand for re-sentencing. Id.; State v. Lanclos, 419 So.2d 475, 478 (La.1982). Further, a remand for more complete compliance with La.C.Cr.P. art. 894.1 is not required when the sentence imposed is not apparently severe. State v. Robicheaux, 412 So.2d 1313, 1319 (La.1982). See also: State v. Sanders, 98-855 (La.App. 5th Cir. 5/19/99), 734 So.2d 1276, 1279.
The sentencing exposure for simple rape is imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than 25 years. La. R.S. 14:43(C). The Defendant here was sentenced to "ten years, without benefit of probation, parole, or suspension of sentence."[8] However, the trial judge did not undertake an examination of the factors set out in La.C.Cr.P. art. 894.1 prior to sentencing, nor did he articulate reasons for the sentence. Nevertheless, we need not remand for resentencing because the sentence imposed was less than half of the possible sentence exposure and the record contains an adequate factual basis for the sentence imposed. The Defendant admitted to "having sex" with a victim whom he knew to be inebriated. He also knew that she was in his house against her will because she was crying and suffering from a bleeding head wound. Furthermore, prior criminal activity, which is not limited to convictions, is one of the factors to be considered by the trial judge in sentencing a defendant. State v. Washington, 414 So.2d 313, 315 (La.1982); State v. Bowers, 746 So.2d at 86. Here, the Defendant stated at trial that he had "just recently got on probation" for a felony theft conviction and he admitted to a prior misdemeanor conviction for marijuana possession.
The trial judge is granted great discretion in imposing a sentence and sentences *705 will not be set aside as excessive absent clear abuse of that broad discretion. State v. McCorkle, 97-966 (La.App. 5th Cir. 2/25/98), 708 So.2d 1212, 1219; State v. Riche, 608 So.2d 639, 640 (La.App. 5th Cir.1992), writ denied, 613 So.2d 972 (La. 1993). Based on the record, we find that the sentence is not excessive.

ERROR PATENT
We have reviewed the record for errors patent, according to La. C .Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Perrilloux, 99-1314 (La.App. 5th Cir. 5/17/00), 762 So.2d 198, 206 and find that the sentence must be vacated and the case remanded for resentencing because the record shows that the trial judge failed to observe the 24 hour delay between the denial of the motion for new trial and the imposition of sentence as required by La.C.Cr.P. art. 873. The article provides:
If a Defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, a sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the Defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In this case, the Defendant filed a motion for new trial prior to sentencing. On March 3, 2000, the trial judge denied the Defendant's motion for new trial and immediately imposed sentence. The record does not reflect that the Defendant waived the sentencing delays.
When the Defendant challenges the penalty imposed and the imposed sentence is not mandatory, the failure to observe the 24 hour delay mandated in La.C.Cr.P. art. 873 cannot be considered harmless error. State v. Augustine, 555 So.2d 1331 (La.1990); State v. Richardson, 00-134 (La.App. 5th Cir. 9/26/00), 770 So.2d 454, 458; State v. Avila, 563 So.2d 990, 993 (La.App. 5th Cir.1990).[9] In both Richardson and Avila, this Court affirmed the conviction, vacated the sentence and remanded to the trial court for resentencing. Because the Defendant complains of the sentence and it is not mandatory, we will vacate the sentence and remand for resentencing.
We also find two other errors that the trial judge should correct on remand. First, the trial judge failed to advise the Defendant of the provisions of La.C.Cr.P. 930.8 relative to the prescriptive period for post conviction relief. Thus, on remand for resentencing, the trial judge is ordered to inform the Defendant of the prescriptive period for post conviction relief, pursuant to C.Cr .P. 930.8.
Additionally, the Defendant was convicted of simple rape, in violation of La. R.S.14:43, a "sex offense" as defined by La. R.S. 15:542(E). La. R.S. 15:540 et seq., requires registration of sex offenders and written notification of the registration requirement to the Defendant. However, the trial judge did not provide written notification of the registration requirements of La. R.S. 15:542, as required by La. R.S. 15:543(A). Thus, on remand for resentencing the trial judge is instructed to provide written notice to the Defendant of the registration requirements of La. R.S. 15:543(A).
*706 Accordingly, the Defendant's conviction is hereby affirmed. The sentence is vacated and the case remanded for resentencing in conformity with this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] Defendant was indicted with co-defendant, Arthur Williams (Williams). The trials were severed on October 18, 1999. On April 11, 2001, this Court affirmed Williams' conviction and sentence for forcible rape, a violation of La. R.S. 14:42.1. See: State v. Williams, 00-KA-981 (La.App. 5th Cir. 4/11/01), 786 So.2d 805.
[2] The location was later determined to be on Washington Street in Kenner.
[3] Pierce uses the terms embankment and levee interchangeably to describe the location of the rape. For consistency, we use the term "embankment".
[4] Pierce testified that Williams penetrated her vaginally at least one time and also attempted to have anal and oral sex with her.
[5] Pierce did not know if the Defendant ejaculated while he was raping her.
[6] The Defendant failed to file a motion for post verdict judgment of acquittal, challenging the sufficiency of the evidence pursuant to La.C.Cr.P. art. 821. Although he filed a motion for new trial, procedurally there is a distinction between the two motions. However, such failure does not preclude appellate review of the sufficiency of the evidence. See: State v. Washington, 421 So.2d 887 (La. 1982); State v. Allen, 440 So.2d 1330 (La. 1983); State v. Girod, 94-853 (La.App. 5th Cir. 3/15/95), 653 So.2d 664. In Girod, 653 So.2d at 667, this Court stated, "However, we will address the issue, even when not properly raised, if it is briefed pursuant to formal assignment of error. See State v. Allen, 440 So.2d at 1332-33." Therefore, we will address the issue.
[7] In the first paragraph of this assignment of error, Defendant also states that "the State implied that [Defendant] had committed another crime when he failed to report Mr. Williams to the police." (Defendant's brief, p. 6). He does not present any further argument about this claim and, therefore, as it was not briefed, it is considered abandoned. See: Uniform RulesCourts of Appeal, Rule 2-12.4
[8] At the close of trial, the trial judge ordered a pre-sentencing investigation, but did not refer to the results at Defendant's sentencing. Further, although the pre-sentence investigation report is included with the exhibits of the appellate record, we cannot consider the report in reviewing the sentence. La.C.Cr.P. art. 881.3 provides in pertinent part:

In reviewing a sentence the appellate court may consider the record of the case which shall include any evidence or relevant information introduced at preliminary hearings, hearings on motions, arraignments, or sentencing proceedings, and any relevant information included in a presentencing investigation report filed into the record at sentencing. (Emphasis added).
Here, the Defendant was sentenced on March 3, 2000, but, according to the date-stamp on the front of the pre-sentence investigation report, it was filed into the record on April 26, 2000, after the Defendant's sentencing.
[9] When the penalty imposed is mandatory, reversal of the prematurely imposed sentence is not required, absent a showing that prejudice resulted from the delay. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).