WALTER J. ROTHSCHILD, Judge.
| ¡¿Defendant, Tommy Cullier, was charged by bill of information with being a convicted felon in possession of a firearm, a violation of LSA-R.S. 14:95.1. Following a jury trial, defendant was found guilty as charged. Defendant’s Motion for New Trial was denied and he was sentenced to 15 years at hard labor without benefit of parole, probation, or suspension of sentence. Defendant also filed a Motion to Reconsider Sentence, which was denied by the district court. Defendant now appeals based on sufficiency of the evidence.
The following evidence was adduced at trial:
Deputy Matthew Vasquez was employed by the Jefferson Parish Sheriffs Office as a road deputy during the night watch on December 3, 2007. In the early morning hours of December 3, Deputy Vasquez received a call for service and proceeded to the location of Eiseman and Meyers Street. While en route to that |3location, a second call for service was made for the location of 2nd Avenue and Ames; the nature of the call was a car accident.
Deputy Vasquez proceeded to the second scene. Upon arrival, he found a black male in a green Jeep that had crashed into a concrete barrier on the side of the road at 2nd Avenue and Ames. Deputy Vas *1131 quez identified the individual in the vehicle as defendant. Deputy Vasquez observed that the front axle of the vehicle defendant was driving was resting on a concrete bolder that he had rolled over. The defendant appeared to be trying to dislodge the vehicle by throwing it into drive and reverse, rocking the Jeep back and forth. Deputy Vasquez identified himself to defendant and attempted to get him out of the vehicle to ask what was going on.
While Deputy Vasquez was questioning defendant, police received another call from a witness who stated that defendant had previously gotten out of his vehicle and placed an L-shaped black object in the bushes across the street. At that time, deputies proceeded to look in this area and found a 20-gauge shotgun that had been placed in the bushes. The weapon was loaded with a live round when it was discovered. Deputy Vasquez then arrested defendant based upon the witness’ statement, after a complete advisal of his Miranda [1] rights. According to Deputy Vasquez, the defendant then became agitated and said, “the f — ng gun didn’t work; that he had gotten it years ago.” The defendant struggled briefly while being placed into handcuffs.
On cross examination, Deputy Vasquez explained that after he found the gun he placed it into an evidence bag. He was not aware whether any prints were taken off of the gun or whether any further processing was done.
Rhonda Walker testified at trial that she lived at 913 Ames in Marrero on December 3, 2007. At approximately 2:00 a.m. that morning, she was in her Rbathroom when she heard a sound outside that she described as a “hit”. She looked out of her window and across the street and saw a small SUV on top of a concrete pole. There was movement inside of the vehicle. She saw the vehicle attempt to back out, but it remained stuck. Someone exited the driver’s side of the vehicle. At approximately the same time as the driver’s door opened, Ms. Walker saw a person riding toward the vehicle on a bicycle. The person on the bicycle crossed the street and then went to the back of the vehicle before taking off.
The individual from the car then walked across Ames toward where Ms. Walker was watching. She could not see the person well enough to make an identification. However, she noticed that the person had something in his hand, either a “stick” or a “weapon”. The individual crossed the street and she saw that “something was thrown by the neighbor’s house.” Ms. Walker believed that the shape of what was being carried was “consistent with how a weapon would look.” She called the police because she knew children lived at that home and did not want there to be a possibility that they could get hurt.
While Ms. Walker called 9-1-1, the person returned to his car and got in. The police then arrived and began to question the same person that she saw exit the vehicle with the object and throw it into the bushes.
On cross examination, Ms. Walker testified that she phoned 9-1-1 from her bedroom after she saw the object being thrown in the bushes. When she went back to her bathroom window, the police were already there. She recalled telling the 9-1-1 dispatcher that the person who tossed what she thought was a gun was a white male. She did not recall telling the police officer taking her statement that the person was a black man.
IsOn redirect examination, Ms. Walker stated that she did not get a good look at the person who exited the vehicle in ques *1132 tion. She told the 9-1-1 dispatcher that the individual was a “white guy or a lighter skinned fellow”. She couldn’t say with 100 percent certainty what the race of the person was. She was certain, however that the person approached by the police was the same person who exited the vehicle, placed the gun in the bushes and got back into the vehicle again.
Nancy Webber, who was employed by the Jefferson Parish Sheriffs Office as a clerk for the Communications Department, authenticated the audio cassette copies of 9-1-1 calls relevant to the case.
U.S. Marshall Robert Bradstreet testified that he is employed with the United States Marshals as a deputy in the Middle District of Louisiana. He was asked by the State to produce bond papers at trial for Tommy Joseph Cullier. Deputy Bradstreet also produced defendant’s 2001 indictment for the federal charge of mail fraud as well as other documents which show defendant was convicted in federal court of mail fraud in 2002.[2] Defendant’s fingerprints were taken as part of his federal conviction.[3]
Deputy Chad Pittfield testified that he was an employee of the Jefferson Parish Sheriffs Office Crime Laboratory in the Latent Print section as a latent print examiner. Deputy Pittfield had previously been qualified as an expert in fingerprint examination and identification in the Twenty-Fourth Judicial District Court and the court accepted him as an expert in this case. On the date of trial, Deputy Pittfield fingerprinted the defendant, and the results were marked for identification. These results were then compared to a 1996 conviction packet from | nthe Twenty-Fourth Judicial District Court in connection with defendant’s conviction for LSA-R.S. 14:95.1, being a felon in possession of a firearm. Deputy Pittfield explained that the defendant’s fingerprints taken on the date of trial matched those from the earlier conviction, which were taken on February 14,1996.
The fingerprints taken on the date of trial were then compared to a conviction packet which indicated that defendant had been charged with First Degree Murder. The date of the offense was May 21, 1979. The conclusion made by Deputy Pittfield after an examination was that the fingerprints were made by the same person.
On cross-examination, Deputy Pittfield clarified that on the conviction packet for murder, the fingerprints came separate from the packet as an additional document. He concluded that that fingerprint card went with the paperwork on the murder conviction packet based on the facts that the dates of the offenses matched up as well as defendant’s name.
Scott Rome testified that he was employed by the Department of Corrections, Division of Probation and Parole. Mr. Rome brought documents to trial which indicate that defendant served a portion of a 21-year sentence for manslaughter after having pled guilty on October 25, 1979. He was released from Angola on May 2, 1993. The records supplied by Mr. Rome also indicated that on February 14, 1996, defendant pled guilty to “attempt possession of a firearm” for which he served a *1133 six-month sentence. He was released on that charge on September 16,1996.
On cross examination, Mr. Rome stated that he did not personally supervise defendant and had no personal knowledge of the content of the files he provided at trial. However, on redirect, Mr. Rome indicated that part of his job duties is the 17maintenance of the records he presented. The probation and parole history of the defendant was introduced into evidence over defendant’s objection.
The defense rested without calling any witnesses.
By his sole assignment of error, defendant argues that the evidence was insufficient to convict him of being a felon in possession of a firearm. Specifically, defendant claims that the State’s only eyewitness, Rhonda Walker, failed to correctly identify the defendant’s race at trial. The defendant also asserts that by disagreeing with Deputy Vasquez’s report, Ms. Walker called his entire testimony into question.
Conversely, the State argues that the testimony of Rhonda Walker and Deputy Vasquez were sufficient to establish beyond a reasonable doubt that defendant was in possession of the firearm. The State further argues that the jury clearly found these two witnesses to be credible.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005) (quotation omitted). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
| ^Defendant was convicted of possession of a firearm by a convicted felon. The applicable statute LSA-R.S. 14:95.1(A), provides in pertinent part, that, “[I]t is unlawful for any person who has been convicted of a crime of violence as defined in La.R.S. 14:2(B) which is a felony, ... to possess a firearm or carry a concealed weapon.” To support a conviction under LSA-R.S. 14:95.1, the State must prove that the defendant possessed the firearm, that the defendant has a prior conviction for an enumerated felony, that the defendant possessed the firearm within ten years of the prior conviction, and that defendant had general intent to commit the crime. State v. Gordon, 00-1013, p. 14 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 142, writs denied, 02-0362 (La.12/19/02), 833 So.2d 336; 02-0209 (La.2/14/03), 836 So.2d 134.
In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant’s identity as the perpetrator. State v. Draughn, 05-1825, p. 8 (La.1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007); State v. Ingram, 04-551, p. 6 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Where the key issue is identification, the State is required to negate any reasonable probability of misidentifieation. Draughn, supra.
Defendant does not argue that the State failed to establish any of the essential statutory elements of his conviction. Rather, defendant solely contends the State failed *1134 to prove beyond a reasonable doubt his identity as the offender.
This Court has noted that positive identification by one witness is sufficient to support a conviction. State v. Harris, 07-124, p. 9 (La.App. 5 Cir. 9/25/07), 968 So.2d 187, 193. In this case, the State presented identifications of defendant by two witnesses: Rhonda Walker and Deputy Matthew Vasquez.
|nMs. Walker stated that from the vantage point of her home she could not see the driver of the vehicle well enough to make an identification. She told the 9-1-1 dispatcher that the individual was a “white guy or a lighter skinned fellow”. She couldn’t say with 100 percent certainty what the race of the person was. She was certain, however, that the person approached by police was the same person who exited the vehicle, placed the gun in the bushes and got back into the vehicle again. As noted by the State, while she was on the phone with the 9-1-1 operator, Ms. Walker exclaimed that the police “got” the defendant and were patting him down. Although Ms. Walker was not able to identify the person driving the vehicle, her testimony corroborated that of the other identification witness presented by the State.
Deputy Matthew Vasquez stated that upon arriving at the scene, he made contact with the individual seated in the vehicle, who he identified in court as the defendant. While Deputy Vasquez was questioning defendant, police received another call that “the person who was driving the vehicle that we were talking to, which was Mr. Cullier, had already got out of the vehicle before we got there and placed an L-shaped black object in the bushes across the street.” After the gun was found, Deputy Vasquez then went to affect an arrest on defendant based upon the witness’ statement. After Deputy Vasquez read defendant his Miranda rights, defendant made an incriminating statement with respect to his possession of the gun that “the f- — ng gun didn’t work; that he had gotten it years ago”.
Defendant attacks the credibility of each of the State’s identification witnesses. He first argues Ms. Walker could not positively identify defendant’s race. Next, defendant argues that there were discrepancies about when she said that she called police and when she actually witnessed the events unfolding. Defendant further asserts that Ms. Walker’s testimony is contradicted by aspects of Deputy | inVasquez’s police report.[4] Finally, defendant argues that because Ms. Walker denied making certain statements to Deputy Vasquez that were included in his report, that Deputy Vasquez’s credibility was called into question.
The credibility of witnesses is within the sound discretion of the trier of fact. State v. Jones, 08-20, p. 7 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement- on the fundamental due process of law. Id. The jury obviously believed the testimony of the State’s witnesses who positively identified defendant as the driver of the vehicle and the person who placed a gun in the bushes of a house near the accident scene. Through cross examination, the jury was well aware of the credibility issues which defendant argues. Furthermore:
[w]hen a witness is impeached, this simply means the jury, as the trier of fact, *1135 is presented with evidence which it could consider and weigh in determining the credibility, or believability, of a witness. Simply because the witness may have been impeached by prior inconsistent statements does not mean that the jury is prohibited from believing anything said by the witness. The inconsistencies in the witness’s statements are one of any number of factors the jury weighs in determining whether or not to believe a witness’s trial testimony.
State v. Brown 01-41 (La.App. 5 Cir. 5/30/01), 788 So.2d 694, 701 (citations omitted).
Although defendant suggests mis-identification, viewing the evidence in a light most favorable to the State, we find that the evidence sufficiently negates all reasonable probability of misidentification and that the State sufficiently proved defendant’s identity as the perpetrator of the offense. As stated previously, defendant does not contest that the State proved all other elements of the charged offense at trial. Nevertheless, as required by LSA-R.S. 14:95.1, the record shows Inthat the State demonstrated that defendant had a prior conviction for manslaughter, a crime of violence as defined in LSA-R.S. 14:2(B). The State also presented evidence of defendant’s possession of the weapon and general intent to commit the crime through the testimony of its witnesses. With respect to the 10-year cleansing period, the State proved that since defendant’s original discharge date for manslaughter in on May 2, 1993, there were several interruptions: A felon in possession of a firearm conviction for which he was released on September 16, 1996, and a federal mail fraud conviction for which he was sentenced on November 11, 2002. Even though these are not offenses enumerated under LSA.R.S. 14:2(B), they may still serve as interruption to the cleansing period. Therefore, this element of the offense was met. State v. Batiste, 96-2203 (La.App. 4 Cir. 10/22/97),701 So.2d 729, 733, writ denied, 98-3094 (La.4/23/99), 740 So.2d 648.
Under these circumstances, we find the evidence presented is sufficient to convict defendant of the crime charged.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). No errors were discovered which require corrective action by this Court.
Accordingly, for the reasons assigned herein, the conviction and sentence of defendant Tommy Joseph Cullier are hereby affirmed.

AFFIRMED

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. State’s Exhibits 1 through 4 were offered as copies of the U.S. Marshall’s files for defendant's prior conviction. Exhibit 2 consists of a certified judgment and commitment from the Federal Court for the Middle District of Louisiana. These exhibits were offered and admitted over defendant’s objection.

. State’s Exhibit 4 shows that on November 11, 2002, defendant was sentenced to probation for three years for a mail fraud conviction.

. As noted by defendant, however, because this report was not entered into evidence at trial, this Court is prohibited from reviewing it on appeal.