421 So.2d 854 (1982)
STATE of Louisiana
v.
Noland BROWN.
No. 81-KA-3182.
Supreme Court of Louisiana.
October 18, 1982.
Rehearing Denied November 19, 1982.
*855 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Speedy O. Long, Dist. Atty., Dan B. Cornett, Asst. Dist. Atty., for plaintiff-appellee.
J.P. Mauffray, Jr., Jena, for defendant-appellant.
WARD, Justice Pro Tem.[*]
Noland E. Brown was charged by a bill of information with simple burglary of the Jena Pharmacy, Inc., a violation of La.R.S. 14:62.1. At arraignment, Brown entered pleas of not guilty and not guilty by reason of insanity. After a trial, the jury returned a verdict of guilty as charged, and Brown now appeals that conviction. Although defense counsel made thirteen assignments of error in which he asked for reversal, for the purpose of this discussion the assignments are grouped into seven arguments. Before discussing counsel's arguments, however, a brief description of the burglary and the circumstances of Brown's arrest is appropriate.
The burglary must have occurred between five p.m. on December 31, 1979, and eight a.m. on January 2, 1980, because Sidney Max Parker, owner of the Jena Pharmacy, closed his business at the end of the day on December 31, 1979, New Year's Eve, and the pharmacy remained closed until after the New Year, when Parker reopened his business on January 2, 1980, and discovered the burglary. A back door had been forced open, and Mr. Parker found that some controlled dangerous substances were missing from his store. Officers who were called to investigate were unable to solve the burglary until, during the course of investigating other pharmacy burglaries in the area, police arrested three suspects: Melvin Whatley, Timmy Robertson, and Billy Kennedy. Whatley and Robertson confessed to committing the burglary of the Jena Pharmacy, and they implicated Brown as one of the perpetrators. Based on this information, State Trooper Larry Morphis obtained an arrest warrant and arrested Brown at his home on July 8, 1980. During trial, Whatley, Robertson and Kennedy testified, and they all described how they drove around the City of Jena on New Year's Eve until after midnight, when Brown and Robertson entered the Jena Pharmacy through the back door in the early morning hours of January 1, 1980. They described how Brown and Robertson returned to the automobile with drugs in their possession and how the drugs were later divided among the four.
During trial, Brown's counsel made several motions for a judgment of acquittal. He argues now, in Assignments of Error Numbers 1 and 2, that the Trial Judge committed error when he denied those motions.
We believe, however, that the Trial Judge was correct. La.C.Cr.P. Art. 778.[1]
*856 Even if the Trial Judge believed Brown's motions were well founded, he did not have the authority to render a judgment of acquittal, and, therefore, he did not commit error when he refused to do so.
Next, in Assignments of Error Numbers 3 and 4, defense counsel argues that the State failed to prove that the offense occurred on the date named in the bill of information. Relying on Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), he contends, therefore, that the evidence is insufficient to support a guilty verdict and that the Trial Judge erred when he did not render a judgment of acquittal. As we have previously explained, the Trial Judge in a jury trial does not have authority to render a judgment of acquittal. Nonetheless, the Trial Judge was correct when he denied the motion. Jackson v. Virginia, supra, holds that fundamental concepts of due process require that a guilty verdict must be set aside unless a rational trier of fact, viewing the evidence in the light most favorable to the State, could reasonably conclude that defendant's guilt had been proven beyond a reasonable doubt. Here, the bill of information charged the crime occurred "on or about the night of December 31, 1979, or the morning of January 1, 1980." Brown's accomplices, Whatley, Robertson and Kennedy, testified that on that night they had been driving around Jena using drugs and that sometime shortly after midnight, Brown and Robertson broke into the pharmacy to obtain drugs. Applying the standards of Jackson v. Virginia, supra, to the evidence in the instant case, we believe that the evidence was not only sufficient, we believe that it was overwhelming to prove that Brown entered the pharmacy in the early morning of January 1, 1982, and stole drugs which were controlled dangerous substances. Moreover, the standards of Jackson v. Virginia are applicable only to essential elements of a crime, and the date and time are not essential elements of the crime of burglary.
Other matters raised in Assignments of Error Numbers 3 and 4 do not warrant further discussion.
Counsel for Brown next argues in Assignments of Error Numbers 5 and 6 that the Trial Court erred in permitting the jury to hear testimony giving the content of an oral incupatory statement made by defendant because the State had failed to give notice of its intent to introduce the statement. La.C.Cr.P. Art. 768 states:
If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
Defendant made a specific request for this information in his motion for discovery and asked to be informed of "the existence of all oral confessions and statements of any nature made by the defendant, which the State intends to offer in evidence at trial...." Prior to trial, the State's attorney informed Brown's counsel by letter of Brown's inculpatory statement:
"You have requested a copy of the recorded statement given by Noland E. Brown. Mr. Brown did not give a recorded statement. When the defendant was arrested and advised of his Miranda rights by Trooper Larry Morphis, defendant was advised he was under arrest for the burglary of a pharmacy. The name of the pharmacy involved was not mentioned. After Brown was arrested, his wife entered the room and asked what was going on. Brown answered, `They said I broke into the Jena Pharmacy, I mean a pharmacy in Jena, but I have three or four witnesses that can prove I was at home that night.' When Morphis asked Brown how he knew he was being arrested for the burglary of the Jena Pharmacy, he replied that he had meant a pharmacy in Jena. When Morphis asked Brown how he could provide witnesses *857 saying that he was at home on the night of the burglary when he had stated that he had no knowledge of the incident and had not been told by Morphis the date of the incident Brown only replied, `I'm not guilty.'
This should comply with your motion for discovery."
Brown's counsel argues that although he had been informed of the existence of the statement, it was not admissible in evidence because he had not been informed that the State intended to introduce it as evidence.
We decline to interpret Article 768 in such a pedantic manner. The State's attorney clearly indicated in his letter that the information transmitted was in response to Brown's motion for discovery, and any reasonable person would have concluded that the State intended to introduce the statement in evidence. Since the information contained in the letter satisfies the notice requirement of Article 768, the Trial Judge was correct when he permitted the content of the inculpatory statements to be heard by the jury.
Defense counsel also alleges in Assignment of Error Number 7 that the Trial Court erred in allowing T.J. Shuflin, a criminalist who qualified as an expert in the identification of drugs, to testify that the drugs stolen in the burglary were classified as controlled dangerous substances, an essential element of the offense.[2] This testimony may have been cumulative, repeating Mr. Parker's testimony, but it was certainly relevant, and to admit it was not error.
Counsel also argues in Assignment of Error Number 10 that the Trial Judge erred when he permitted Whatley, Robertson and Kennedy to testify as to statements they and Brown made during the time they were driving around the city of Jena while they were planning to commit the burglary. In discovery motions, counsel had requested to be informed if the State intended to use hearsay statements of co-conspirators. The State's attorney answered, but only indicated a willingness to provide at a later date the information requested by Brown's counsel, and the record does not contain the State's answers themselves. Nevertheless, Brown proceeded to trial without objection, and during trial Billy Kennedy testified as to what could possibly be construed as hearsay statements of a co-conspirator. While it is true that Brown's counsel objected before Kennedy gave that testimony, the reason given for the objection was that a prima facie case of conspiracy had not first been provided. Counsel did not object to the testimony for the reason argued in this appeal, that is, that he had not been furnished notice of intention to use hearsay statements of co-conspirators.
We believe, therefore, that the Trial Judge did not err when he permitted Kennedy to testify as to the statements of co-conspirators because the record clearly indicates a prima facie case of conspiracy had been established. Although counsel now in this appeal argues that the testimony was inadmissible because the State failed to give notice that it would be used, counsel cannot raise a new basis for an objection on appeal. State v. Baylis, 388 So.2d 713 (La.1980). Moreover, when counsel proceeded to trial without answers to his motions for discovery, he waived the right to object to testimony which might otherwise be excluded because of the lack of answers to discovery motions. State v. Bonanno, 373 So.2d 1284 (La.1979).
In Assignments of Error Numbers 9, 10, and 11, Brown argues that the Trial Judge erred by refusing to give some of his requested special charges to the jury. These charges, he argues, would help the jury understand both of his defenses: intoxication, which would negate specific intent, and insanity at the time of the commission of the offense. The suggested *858 charges were taken verbatim from LSA-R.S. Title 40 pertaining to controlled dangerous substances:
SPECIAL INSTRUCTION NO. 9:
A drug addict is a drug dependent person who habitually uses any narcotic drugs as to have lost the power of self control with reference to his use of said drugs. LSA-R.S. 40:961(1)
SPECIAL INSTRUCTION NO. 10:
Narcotic drug includes that class of drugs known as opium and opiates. LSA-R.S. 40:961(23)
SPECIAL INSTRUCTION NO. 11:
Opiate means any dangerous substance having an addiction sustaining liability similar to morphine. LSA-R.S. 40:961(24)
SPECIAL INSTRUCTION NO. 12:
Schedule II drugs are drugs which are found to have the following properties:
1) the drug has a high potential for abuse; and
2) the drug has a currently accepted medical use in treatment in the United States; and
3) abuse of the drug may lead to severe psychological or physical dependence." LSA-R.S. 40:963.
Article 807 of the Louisiana Code of Criminal Procedure provides:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The special charges, while wholly correct, were not wholly pertinent to his defenses; when they were pertinent, the Trial Judge included them in the charge to the jury. The Trial Judge did not err when he omitted some of the charges.
In Assignments of Error Numbers 12 and 13, Brown's counsel contends that this Court should reverse his conviction because he proved by a preponderance of the evidence that Brown was insane at the time of the commission of the Act. In his brief, counsel argues the applicability of Jackson v. Virginia, supra, and contends "that the defendant easily met his burden of proof on the special defenses of intoxication and insanity at the time of the offense," and that "no reasonable trier of fact would have concluded otherwise." Yet in his motion for a new trial, counsel did not include this allegation as a ground for granting a new trial. In a jury trial the proper procedure for raising the issue of whether there is sufficient evidence to support a conviction is by a motion for a new trial.[3] Even though the issue was not properly presented to the Trial Judge, we have considered the question of whether the evidence is sufficient to support the verdict and the special application of the Jackson v. Virginia rule as to the insanity defense.
When a defendant pleads insanity as a defense, he must prove his insanity by a preponderance of the evidence. La.C. Cr.P. Art. 652. In a motion for a new trial, the Trial Judge must decide whether there is a sufficiency of evidence by applying the test of Jackson v. Virginia. When insanity is specifically pleaded as a defense, because it is an affirmative defense and because the defendant must bear the burden of proof to show his insanity by a preponderance of the evidence, the test of Jackson v. Virginia in that particular situation has been formulated to be:
... whether under the facts and circumstances of the case, any rational fact finder, reviewing the evidence in the light most favorable to the prosecution, could conclude that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense.
State v. Claibon, 395 So.2d 770 (La.1981).
In this particular case, although defendant's evidence may have proved that he *859 was addicted to the use of drugs, it fell woefully short of proving by a preponderance of the evidence that he could not distinguish right from wrong. C.Cr.P. Art. 652; LSA-R.S. 14:14. We believe, therefore, that a rational trier of fact could well conclude, if he considered the evidence in the light most favorable to the State, that defendant had not proved his defense of insanity by a preponderance of the evidence.
We, therefore, affirm defendant's conviction and sentence.
AFFIRMED.
NOTES
[*] Judges William H. Byrnes and David R.M. Williams of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Pro Tempore, with Chief Justice Dixon and Associate Justices'-Marcus, Blanche and Lemmon.
[1] Act 144 of 1982, effective September 10, 1982, grants authority to the Trial Judge to grant a post-verdict judgment of acquittal, when the Court finds that the evidence, viewed in a light most favorable to the State, does not reasonably permit a finding of guilty. This Act, a legislative response to the problem created by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and Burks v. U.S., 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), is not applicable to motions made prior to the jury verdict, and is applicable only to cases tried after September 10, 1982.
[2] La.R.S. 14:62.1.A. Simple burglary of a pharmacy is the unauthorized entry of any building, warehouse, physician's office, hospital, pharmaceutical house, or other structure used in whole or in part for the sale, storage and/or dispensing of controlled dangerous substances, as defined in R.S. 40:961(7), with the intent to commit the theft of any drug which is defined as a controlled dangerous substance in R.S. 40:961(7) other than set forth in R.S. 14:60.
[3] La.C.Cr.P. Art. 851(1); see also footnote 1, supra.