# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**08-549**

**STATE OF LOUISIANA**

**VERSUS**

**S.L.D.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR 120-05
HONORABLE HERMAN I. STEWART JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and
Marc T. Amy, Judges.

**AFFIRMED.**

**David W. Burton
District Attorney
Richard F. Blankenship
Assistant District Attorney
Post Office Box 99
DeRidder, LA 70634
(337) 463-5578
COUNSEL FOR APPELLEE:**
 **State of Louisiana**

**Annette Fuller Roach
Louisiana Appellate Project
Post Office Box 1747
Lake Charles, LA 70602-1747
(337) 436-2900
COUNSEL FOR DEFENDANT/APPELLANT:**
 **S.L.D.**

**S.L.D.
A.V.C. Cajun 1, A-1
1630 Prison Rd.
Cottonport, LA 71327**

AMY, Judge.

A jury convicted the defendant of two of the six counts of felony carnal knowledge of a juvenile charged by the State. After the trial court adjudicated the defendant a fourth felony offender, it imposed concurrent sentences of twenty-five years at hard labor for the convictions. The defendant appeals, questioning the sufficiency of the evidence on one of the convictions and asserting that the trial court erred in permitting the introduction of hearsay evidence. The defendant also questions the habitual offender proceedings. For the following reasons, we affirm.

**Factual and Procedural Background**

The State alleged that the defendant, S.L.D.[1], who was over the age of nineteen, committed one count of felony carnal knowledge of a juvenile, against S.M.S., and five counts of felony carnal knowledge of a juvenile, against A.M. The State further charged the defendant with the aggravated incest of his stepdaughter, J.P.S., then under the age of eighteen years of age. Finally, the State charged the defendant with bail jumping.[2]

---

[1] In accordance with La.R.S. 46:1844(W), initials have been used to protect the privacy of the victims. The defendant's initials are used as one of the charges was aggravated incest.

[2] The amended bill of information provided the following charges:

COUNT 1: [In the Parish of Beauregard, State of Louisiana, on or about the 1st day of July, 1998, through the 19th day of November, 1998, [S.L.D.]] . . . [d]id willfully and unlawfully violate R.S. 14:80, Felony Carnal Knowledge of a Juvenile, in that [S.L.D.] is over nineteen years of age, having been born on February 4, 1972, and engaged in vaginal sexual intercourse with S.M.S., a person under seventeen years of age, having been born on November 20, 1982, and who is not the spouse of [S.L.D.], a felony

COUNT 2: On or about August 1, 2004, through August 30, 2005, [S.L.D.], did willfully and unlawfully violate R.S. 14:78.1, Aggravated Incest, in that [S.L.D.] did engage in acts of vaginal and oral sexual intercourse with J.P.S., a person under the age of eighteen years, having been born on April 16, 1993, and who is known by [S.L.D.] to be his stepdaughter, (a felony)

COUNT 3: On or about January 19, 2004, [S.L.D.], did willfully and unlawfully violate R.S. 14:80, Felony Carnal Knowledge of a Juvenile, in that

As the defendant's appeal focuses on the conviction for the count of felony carnal knowledge of a juvenile involving A.M., we set forth the factual history relevant to this appeal. The State alleged that the defendant, S.L.D., born in 1972, perpetuated numerous acts of vaginal and oral sexual intercourse on A.M., born in June 1989. One alleged offense was identified as occurring on or about January 19, 2004, while two each were identified as occurring on or about October 19, 2004, and on or about October 22, 2004.

---

[S.L.D.] is over nineteen years of age, having been born on February 4, 1972 and had vaginal intercourse with A.M., a person under seventeen years of age, having been born on June 11, 1989, and who is not the spouse of [S.L.D.], (a felony)

COUNT 4:    On or about October 19, 2004, [S.L.D.], did willfully and unlawfully violate R.S. 14:80, Felony Carnal Knowledge of a Juvenile, in that [S.L.D.] is over nineteen years of age, having been born on February 4, 1972 and had vaginal intercourse with A.M., a person under seventeen years of age, having been born on June 11, 1989 and who is not the spouse of [S.L.D.], (a felony)

COUNT 5:    On or about October 19, 2004, [S.L.D.], did willfully and unlawfully violate R.S. 14:80, Felony Carnal Knowledge of a Juvenile, in that [S.L.D.] is over nineteen years of age, having been born on February 4, 1972 and had oral sexual intercourse with A.M., a person under seventeen years of age, having been born on June 11, 1989 and who is not the spouse of [S.L.D.], (a felony)

COUNT 6:    On or about October 22, 2004 [S.L.D.], did willfully and unlawfully violate R.S. 14:80, Felony Carnal Knowledge of a Juvenile, in that [S.L.D.] is over nineteen years of age, having been born on June 11, 1989 and who is not the spouse of [S.L.D.], (a felony)

COUNT 7:    On or about October 22, 2004, [S.L.D.], did willfully and unlawfully violate R.S. 14:80, Felony Carnal Knowledge of a Juvenile, in that [S.L.D.] is over nineteen years of age, having been born on February 4, 1972 and had oral sexual intercourse with A.M., a person under seventeen years of age, having been born on June 11, 1989 and who is not the spouse of [S.L.D.], (a felony).

COUNT 8:    On or about June 19, 2006, [S.L.D.], did willfully and unlawfully violate R.S. 14:110.1, Jumping Bail, in that [S.L.D.] did fail to appear at the Beauregard Parish Courthouse, in DeRidder, Louisiana, at 9:00 o'clock A.M., as designated by the judge, regarding felony charges, to-wit: Felony Carnal Knowledge of a Juvenile, (a felony)

At trial, A.M. explained that the defendant and his wife were neighbors and friends of her parents. She testified that she had a "crush" on the defendant and admitted that she left home on the night of October 22, 2004 to follow him. She denied having had a sexual encounter with the defendant up to that point. However, she explained that she had told Detective Janet Beebe of the Beauregard Parish Sheriff's Department that she and the defendant had vaginal sexual intercourse that night as well as a few nights before. She could not recall whether she informed Detective Beebe of oral sexual intercourse with the defendant.

However, Detective Beebe testified that she interviewed A.M. on November 1, 2004 and that A.M. stated that she and the defendant had engaged in both oral and vaginal sexual intercourse at various times in 2004. At trial, A.M. contested the veracity of her statement to Detective Beebe, noting that she tried to later recant the statement.

Yet, A.M. testified that, while on a camping trip during 2004, she attempted to perform oral sexual intercourse on the defendant. She contended that he was asleep and/or intoxicated at the time and that he pushed her away.

In a November 2004 statement to Detective Beebe, the defendant explained that A.M. had pursued him and had asked her parents to "keep her away from [him]." He denied having sexual intercourse with A.M., but when questioned by Detective Beebe whether he had "engaged in oral sex with her," the defendant responded:

> [S.L.D.]  Yes. One night while we was, uh, campin with her mom and them and everybody had left and I was still asleep that morning cause we got pretty drunk the night before and it was real early. It was about daylight and she woke me up havin oral sex with me and uh, from there, ev - - after that (inaudible) I just never - she was like a puppy. Couldn't get away, couldn't I couldn't get away from her.

3

He subsequently stated that: "It happened, I think a total of three times." He denied that he had "given her oral sex and [he] did not force her to do anything." The transcript also reflects the following exchange:

Beebe:     And you said the, the temptation was just there and she just kept on and on and on and you just - -

Doyle:     Right, I give in like, I know - - in the back of my mind, I said you know, just, I knew it was wrong, but it just, when you get drunk like that and then stuff, it happens. Which is my part for drinkin too much.

He reported to Detective Beebe that A.M. had written him letters asking "when we will ever have sex, you know." The transcript indicates that Detective Beebe inquired whether A.M. was "talking about the oral sex" or "about sexual intercourse?" The defendant responded: "She was talkin about intercourse." He responded "Yes" when Detective Beebe asked whether the letters were written "after the oral sex then?" The State presented an additional witness, a former friend of A.M., who testified that she witnessed A.M. performing oral sexual intercourse on the defendant at the defendant's house.

Although the jury acquitted the defendant of four of the offenses involving A.M., it convicted him of felony carnal knowledge of a juvenile on a single count involving oral sexual intercourse with A.M. The jury also convicted the defendant of one count felony carnal knowledge of a juvenile for an offense involving S.M.S and one count of bail jumping. The trial court vacated the bail jumping conviction upon the defendant's motion for post-verdict judgment of acquittal. The trial court subsequently adjudicated the defendant a fourth felony offender. It imposed concurrent, twenty-five year sentences for the two convictions.

The defendant appeals, assigning the following as error:

4

1)     The evidence introduced at the trial of this case when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979) standard, was insufficient to prove all of the elements of the offense of felony carnal knowledge of juvenile AM, beyond a reasonable doubt.

2)     The trial court erred in allowing the State to introduce hearsay evidence in the trial of this case.

3)     The trial court erred in denying SLD's Opposition, Answer/Opposition and his Supplemental Answer/Opposition to the habitual offender bill.

4)     The trial court erred in granting the State a continuance of the habitual offender hearing over objection.

5)     The State failed to prove that the predicate offenses had not been cleansed from SLD's record for habitual offender purposes.

In a separate *pro se* brief, the defendant asserts that the sentences are excessive.

## DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, we review appeals for errors patent on the face of the record. Our review reveals no errors patent.

*Sufficiency of the Evidence*

The defendant first argues that the State's evidence was insufficient to prove the elements of the offense of felony carnal knowledge of a juvenile, A.M., under the dictates of *Jackson*, 443 U.S. 307, 99 S.Ct. 2781. The particular offense for which the jury convicted the defendant, Count 5, involved an act of oral sexual intercourse on or about October 19, 2004. The defendant contends that the only evidence that he engaged in oral sexual intercourse with A.M. during this time frame came from the statement A.M. made to Detective Beebe, but that was later recanted. He contends that, not only was this information inconsistent with her later testimony, but that he was not a willing participant in the act as he was asleep at the time.

5

In review of a sufficiency of the evidence claim, an appellate court considers whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Determinations as to the weight of the evidence presented are questions of fact and rest solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of witnesses. *State v. Macon*, 06-481 (La. 6/1/07), 957 So.2d 1280. "A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence." *Id.* at 1285-86, *citing State v. Bordenave*, 95-2328 (La. 4/26/96), 678 So.2d 19.

At the time of alleged offense, La.R.S. 14:80 provided, in pertinent part:

A. Felony carnal knowledge of a juvenile is committed when:

(1) A person who is nineteen years of age or older has sexual intercourse, with consent, with a person who is twelve years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender; or

. . . .

B. As used in this Section, "sexual intercourse" means anal, oral, or vaginal sexual intercourse.

As explained in the factual and procedural background, A.M. testified that she attempted to perform oral sexual intercourse on the defendant three times during a 2004 camping trip. She responded "Yes, I did" when the State inquired whether she "voluntarily pulled his penis out and put it in [her] mouth?" She stated that "after the third time he walked out" and threatened to tell her parents. The defendant related a similar event in his statement to Detective Beebe. Furthermore, the State also

6

presented J.H., who testified that, on an undisclosed date in 2004, she saw A.M. performing oral sex on the defendant at the defendant's home. Moreover, the record demonstrates that at the time of the defendant's arrest, he was thirty-two, and A.M. turned fifteen in 2004. Thus, there is sufficient evidence in the record to prove that defendant, who was older than nineteen, participated in consensual oral sexual intercourse with A.M., who was younger than seventeen.

The defendant also asserts that there was insufficient evidence to support his conviction because the State failed to prove that oral sexual intercourse occurred on the date alleged on Count 5 of the charging instrument. Under La.Code Crim.P. art. 468[3], when the date of the crime is not an element of the offense, the charging instrument is not insufficient if it does not state the proper date. Further, Louisiana courts have held that the State is not required to present evidence proving the date of the offense when it is not an essential element of the crime. *See State v. Trotter*, 37,325 (La.App. 2 Cir. 8/22/03), 852 So.2d 1247, *writ denied*, 03-2764 (La. 2/13/04), 867 So.2d 689; *State v. Mickens*, 31,737 (La.App. 2 Cir. 3/31/99), 731 So.2d 463, *writ denied*, 99-1078 (La. 9/24/99), 747 So.2d 1118; *State v. Marler*, 560 So.2d 537 (La.App. 1 Cir.), *rev'd in part on other grounds*, 566 So.2d 969 (La.1990); *State v. Brown*, 421 So.2d 854, 856 (La.1982) (stating, "[m]oreover, the standards of *Jackson*

---

[3] Article 468 provides:

The date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense.

If the date or time is not essential to the offense, an indictment shall not be held insufficient if it does not state the proper date or time, or if it states the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day.

All allegations of the indictment and bill of particulars shall be considered as referring to the same date or time, unless otherwise stated.

*v. Virginia* are applicable only to essential elements of a crime, and the date and time are not essential elements of the crime of burglary."). Therefore, because the date of the offense is not an element of the crime, the State was not required to prove the offense occurred on the date alleged in the charging instrument.

This assignment of error is without merit.

*Use of A.M.'s Statement*

The defendant next questions Detective Beebe's testimony regarding A.M.'s statement to her. He asserts that the statements were hearsay, and that the trial court failed to indicate whether there was any restriction on the use of the statement or whether it performed the balancing test required by La.Code Evid. art. 607(D).[4]

Although the defendant contends that the portions of A.M.'s statement to Detective Beebe were hearsay, La.Code Evid. art. 801 provides, in pertinent part:

> **D.** **Statements which are not hearsay.** A statement is not hearsay if:
>
> **(1)** **Prior statement by witness.** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
>
> (a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fully directed the witness' attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement[.]

Here, A.M. testified at trial, was cross-examined by the defense, offered testimony inconsistent with a prior statement, and then specifically refuted the

---

[4] Article 607(D)(2) provides that:

> Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.

8

veracity of her prior statement. Accordingly, under Article 801(D), her inconsistent statements to Detective Beebe were nonhearsay. The trial court was not required to perform the balancing test of La.Code Evid 607(D)(2) as urged by the defendant for these inconsistent statements.

To the extent that certain portions of A.M.'s statement to Detective Beebe were not inconsistent with her testimony at trial, we note that contemporaneous objections were not lodged at trial as is required by La.Code Civ.P. art. 841.[5] First, when the State questioned A.M. about her first interview with Detective Bebee, the defense withdrew an initial objection when the State marked S-5 for identification:

MR. JONES:
    Your Honor, may we approach?

THE COURT:
    You may.

(CONFERENCE AT SIDEBAR:)

MR. JONES:
    Your, Honor, this comes under the guise of prior inconsistent statements; and a proper foundation is to call the witness' attention to the previous statement, ask them if they recall it. If they don't recall it, you can then read it to them. It doesn't allow admissibility of the statement.

MR. BLANKENSHIP:
    I'm not trying to put the whole statement in. I'm going to do exactly what you just told me to do.

MR. JONES:
    I apologize. I thought he was going to offer it in evidence, Judge. I'm sorry.

MR. BLANKENSHIP:
    That's okay.

_____

[5] Article 841 provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

THE COURT:
   All right.

Thus, defense counsel withdrew his objection after the prosecutor explained his purpose in identifying the document.

The next statement contested by the defendant in brief occurred when the State questioned A.M. about her second interview with Detective Bebee. The statement was marked for identification as S-6, but was not introduced into evidence. The State handed A.M. a copy of S-6 and inquired of her statements therein after establishing A.M. did not remember where she was living at the time. We note, however, that there was no objection recorded in the portion of the record cited by defense counsel.

Finally, the defendant references a portion of the trial transcript where defense first objected to testimony by Detective Bebee concerning A.M.'s second police statement:

Q      And in the bill of information and in the arrest warrants, the State has alleged certain dates that certain things happened. Do you recall when [A.M.] told you when the first time she had sex with [S.L.D.] was?

A      Yes. She said that it was, I believe, January 19, 2004. She would have been 14 at that point in time.

Q      She told you that date specifically?

A      Yes, sir.

Q      You hadn't made that date up and put [it] in the report?

A      No, sir. It's a pretty general question that we ask, do you recall -- of anyone. "Do you recall the first time something happened, do you recall the last time?" And she chose that --

MR. JONES:
   Your Honor, may we approach, please? Excuse me Deputy Bebee.

(CONFERENCE AT SIDEBAR:)

MR. JONES:

I think ultimately he's entitled to play the defendant's statement, but I would object to her testifying as to what's in it. If he is --

MR. BLANKENSHIP:

That's not his statement. [A.M.]'s statement.

MR. JONES:

Well, then, any other statement, I would object to the hearsay basis, then.

THE COURT:

How do you overcome the hearsay objection to [A.M.]'s statement?

MR. BLANKENSHIP:

Okay. She's made comments that her mother forced her to come up there on the second time to make that statement. And her mother made her. First of all, her aunt comes up.

THE COURT:

You're not offering this as to the truth of the statement?

MR. BLANKENSHIP:

Well, I certainly would hope that the jury would believe it's January 19; but I want them to know that that was what was told to Janet Bebee. Yes. Remember, I can offer prior consistent statements -- inconsistent statements as well as consistent statements for --

THE COURT:

Right now, right.

MR. BLANKENSHIP:

And I think she --

THE COURT:

That's why you're offering this?

MR. BLANKENSHIP:

That's why I'm offering it.

MR. JONES:

I think she would have -- he would have had to ask [A.M.] while she was on the stand: Isn't it correct that you made a statement to Janet Bebee on this date saying this? I think a foundation has to be laid --

MR. BLANKENSHIP:

I asked her about all those things; and she said all those were lies, she just made those dates up. Now, what I'm trying -- I mean, none of that was true. And I find it -- I think the jury needs to understand that [A.M.] is the one that said, okay, January 19, 2004. That's the end of it. I'm not going into any more of the statements. I'm through with it. But that's important, that she said that date.

THE COURT:

As long as you're limiting these questions to that.

MR. BLANKENSHIP:

Yeah, I'm not going --

THE COURT:

Okay. All right.

Thus, while the defense lodged a hearsay objection and one related to its foundation, the record contains no La.Code Evid. art. 607 objection as now urged. The State did not repeat its question. Instead, it questioned Detective Bebee about A.M.'s return to make a third statement. While the hearsay objection was preserved for review, there is no need for correction on appeal. Even if this court were to find that the statement was hearsay, its introduction was harmless as the substance of the statement related to the January 19, 2004 date alleged to have been the first occurrence of sexual intercourse between A.M. and the defendant. The defendant was acquitted on this charge, and, accordingly, the information was necessarily unattributable to the jury's verdict.

The final record references cited concern the jury instructions. Again, the supplemental record containing the instructions reveals no recorded objection. Further, the record shows that prior to closing arguments, the trial court considered objections to the previously provided draft jury charges. The defendant did not object to the jury instruction on the basis asserted in his appeal.

Accordingly, this assignment of error is without merit.

*Opposition to the Habitual Offender Bill*

The defendant also claims that the habitual offender proceedings were vindictive prosecution because he exercised his right to trial, and that La.R.S. 15:529.1 is unconstitutional in the manner it was applied by the Beauregard Parish District Attorney's Office.

At the habitual offender hearing, the defendant entered evidence as to prior prosecutions produced by the Beauregard District Attorney's Office. The evidence indicated there had been six habitual offender proceedings over the previous ten years. Two of the defendants, Ricky Carthan and Michael Colton, proceeded to trial after being offered plea agreements with waivers of their multiple offender adjudications. After their convictions, the two defendants were adjudicated multiple offenders. One defendant, Timothy Burchett, pled guilty and stipulated to third offender status. The defendant Jeromie McCann was convicted after exercising his right to trial and was adjudicated a multiple offender. There was no plea offer in his case. Another defendant, Timothy Bradford, was offered a plea agreement that did not include a waiver of the multiple offender bill. Mr. Bradford went to trial on the charges and was later adjudicated to be a multiple offender. The final defendant, Charles Cole, pled guilty without the State agreeing to waive multiple offender adjudication. The prosecution subsequently declined to seek habitual offender adjudication.[6] He contends these prosecutions evidence vindictive application of the habitual offender sentencing enhancement on the part of the district attorney.

The trial court found the defendant's argument to be without merit:

---

[6] The summary of the prosecutions provided by the State shows that the prosecution did not waive the multiple offender adjudication. However, the written plea offer states that the prosecution was willing to waive habitual offender proceedings.

13

The Court understands that the District Attorney's office had the right to use as a tool for obtaining guilty pleas a waiver of the habitual offender law. Quite frankly, it would surprise me if there are many cases of imposition of the habitual offender law where there is no trial. I would expect that very few defendants are going to find it beneficial to themselves to be adjudicated as a habitual offender; so, therefore, I find it to be no surprise that you will find the habitual offender law used or imposed in cases where the defendant has gone to trial. Defendants are interested in serving as little time as possible. They're not going to enter in many guilty pleas with the understanding that they will also be subject to habitual offender status. So the Court denies -- overrules the argument against the use of the habitual offender statute as a tool in cases to obtain a guilty plea, and particularly in this case.

As provided by La.Code Crim.P. art. 61, "the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." Further, the district attorney "has great discretionary power to file a habitual offender bill[.]" *State v. Brisco*, 04-3039, p. 13 (La. 7/6/06), 933 So.2d 754, 762, *citing State v. Dorthey*, 92-3120 (La.1993), So.2d 1276. Additionally,

[a] defendant has the burden of proving, by a preponderance of the evidence, the affirmative defense of prosecutorial vindictiveness. In that regard, the court will examine the state's actions in the context of the entire proceedings. The events in the case will create a presumption of vindictiveness if, to a reasonable mind, the filing of the habitual offender bill can be explained only by a desire to deter or punish the exercise of legal rights. But where the government's conduct is equally attributable to legitimate reasons, a defendant must prove actual vindictiveness for a presumption will not apply. A mere opportunity for vindictiveness does not suffice.

*State v. Stewart*, 27,049, p. 4 (La.App. 2 Cir. 5/10/95), 656 So.2d 677, 680, *writ denied*, 95-1764 (La. 12/8/95), 664 So.2d 420, *writ denied*, 95-1768 (La. 12/8/95), 664 So.2d 420 (citations omitted).

The record supports the trial court's determination that the State's offer to waive the habitual offender bill was an incentive given to entice the defendant to

14

enter a guilty plea. There is no indication that the filing of the multiple offender bill was punishment for the defendant's decision to proceed to trial.

This assignment is without merit.

*Continuance of the Habitual Offender Hearing*

The defendant next questions the trial court's granting of a continuance of the habitual offender hearing. He alleges that although both parties acknowledged they were ready to proceed at the beginning of the February 7, 2008 hearing, the State moved for a continuance after he objected to the lack of proper certification for certain court records from Avoyelles Parish. He argues that the continuance provided the State with an opportunity to obtain the certification which the State failed to acquire beforehand, eviscerating "good cause" for a continuance, and that he was prejudiced by the ultimate introduction of the certified letters.

"A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case, if there is good ground therefore." La.Code Crim.P. art. 712. In *State v. Gremillion*, 428 So.2d 940 (La.App. 1 Cir. 1983), the first circuit considered a case wherein the defendant contended the trial court erred when it granted a continuance of the habitual offender hearing. The defense had objected to the introduction of the defendant's previous guilty pleas on the basis the State had not demonstrated the defendant was properly *Boykinized*. *Id*. The trial court granted the prosecution's motion to continue based on the State's assertion it needed to obtain adequate information to prove the propriety of the defendant's prior guilty pleas. *Id*. Noting that the granting of a motion to continue rests within a trial court's discretion, the first circuit found no abuse of discretion. *Id*. Rather, it observed that at the time of the continuance, the defendant had been convicted of the crimes. Thus, the

15

defendant's guilt or innocence was not at issue, only whether he should receive an enhanced sentence. *Id*.

As in *Gremillion*, the appropriateness of the habitual offender adjudication was at issue rather than the defendant's guilt or innocence of the prior offenses. Also, a habitual offender proceeding "is not a trial, legal principles such as res judicata, double jeopardy, the right to a jury trial and the like do not apply." *Dorthey*, 623 So.2d at 1279. Thus, we find no abuse of the trial court's discretion in its granting of the continuance as requested by the State.

This assignment of error is without merit.

*Predicate Offenses*

In his final assignment of error, the defendant maintains that the State failed to prove that the predicate offenses were not cleansed from his record for habitual offender purposes. He argues that the trial court erred in overruling his objection to the introduction of Exhibit S-E and urges that without these exhibits, the State failed to prove that the prior convictions fell within the ten-year period set forth in La.R.S. 15:529.1(C). He argues that S-E was introduced during the testimony of a classification manager for the Department of Corrections, who, he contends, does not qualify under La.R.S. 15:529.1(F) as someone who can certify a prison record.

Under La.Code Evid. art. 803(6), records of regularly conducted business activity are admissible as a hearsay exception:

> **Records of regularly conducted business activity.** A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data

16

compilation, all as shown by the testimony of the custodian *or other qualified witness*, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term "business" as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph.

(Emphasis added).

Henry Goins testified that he worked as a classification manager for the Correction Services Division of the Department of Corrections. He explained that his primary function at the department was to ensure that the inmates were released in accordance with their legal release dates and Louisiana law. He verified that S-E was a seventeen-page document generated from the department's inmate computer database. He explained that, on November 26, 2007, he personally accessed the department's computer system, retrieved the information, and printed the documents.

Mr. Goins explained that these records assist the department in classifying inmates, calculating the inmates' release dates, and for general data on the inmates. He verified that the document at issue was information about the defendant. It listed several identification numbers, such as the defendant's Department of Corrections number, which will remain constant throughout the defendant's life for all convictions and all sentences, and the defendant's state identification number, which was assigned by the State Police and is specific to the defendant.

Mr. Goins explained that the "CAJUN-2" notation at the top of each page is the name of the department's database containing the documents. He stated that each

17

time a person was convicted and sentenced, the information, including the court's docket number, the judicial district, as well as the date of the offense, the conviction, and the sentence, is entered into the database. It also includes the inmate's social security number when available and the inmate's date of birth.

On traversal by the defendant, Mr. Goins explained that he supervised the section responsible for archiving certain records. However, he was not the official custodian of the S-E documents. Nor did he input the date into the database. Mr. Goins explained that he had personal knowledge of the accuracy of the documentation involving the defendant's conviction for possession of stolen things under "Beauregard docket number 66-94," the rap sheet generated by the State Police, a fingerprint card, and a release certificate.

The trial court overruled the defense's objection to Mr. Goins' personal knowledge of the documents, stating:

> I believe that a person who has knowledge of the business records and how the records are kept and who generates the records himself provides sufficient identification to come within the exception to the hearsay rule which is known as the "business records exception," and I'm going to overrule the exception -- the objection.

In *State v. Smith*, 04-800 (La.App. 1 Cir. 12/17/04), 897 So.2d 710, the first circuit concluded that La.R.S. 15:529.1(F) does not provide the exclusive means for proving a defendant's multiple offender status. It determined that multiple offender status could also be proven through introducing records of regularly conducted business activity. *Id*. "To be admitted under a business records exception, the person who actually prepared the documents need not have testified, so long as other circumstantial evidence and testimony suggests [sic] their trustworthiness." *Id*. at 715-16. However, the *Smith* court found the person who testified about the exhibit

18

at the hearing under consideration was unqualified because he did not testify that he had personal knowledge as to how the document was generated, or whether it was identical to the record in the database. *Id*. The first circuit explained that testimony by a witness that he or she either pulled up or witnessed someone pulling up the record would satisfy the personal knowledge requirement. *Id*.

In this case, Mr. Goins testified that S-E was a compilation of data kept in the course of the department's regularly conducted business, that the information was always entered upon the inmate's conviction and sentence, that he regularly accessed and relied upon the material to calculate and verify inmates' release dates, that the documents were generated directly from the department's database, and that he personally accessed the records, printed, and provided them to the prosecution.

In light of this testimony, and under the guidance of La.Code Evid. art. 803(6) and *White*, we find no merit in the defendant's claim that Mr. Goins was not a qualified witness with the personal knowledge to verify the accuracy of the documents. Because the defendant's remaining contentions under this assignment of error were not included in defendant's objection to the trial court, they are not preserved for review on appeal.

This assignment of error is without merit.

*Sentences*

In a separate, *pro se* brief, the defendant argues that the twenty-five year, hard-labor, sentences are excessive. He contends that the trial court had misgivings about imposing the twenty-five year sentences and asserts that the sentencing court considered an aggravated incest charge in Vernon Parish when deciding the defendant's penalty and that the charge was subsequently dismissed. As far as these

19

latter, particular grounds for his claim of excessiveness, however, we note that they were not raised in a motion to reconsider sentence. Therefore, we review the bare claim of constitutional excessiveness. *See* La.Code Crim.P. art. 881.1; *State v. Mims*, 619 So.2d 1059 (La.1993).

An appellate court reviews excessive sentence claims under the abuse of discretion standard of review:

> Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that "[n]o *law* shall subject any person to . . . *excessive . . . punishment*." (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.

*State v. Smith*, 01-2574, pp. 6-7 (La. 1/14/03), 839 So.2d 1, 4 (citations omitted).

The defendant was adjudicated a fourth felony offender under the following circumstances: (1) his current convictions were punishable by less than life imprisonment and (2) no more than one of the predicate offenses were crimes of violence, sex offenses, or drug offenses. Thus, the applicable sentencing provision is La.R.S. 15:529.1(A)(1)(c)(i), which provides for a minimum sentence of twenty years and a maximum of life imprisonment. Accordingly, the defendant's sentences are in the low-range of those possible.

The trial court set forth the following reasons for the sentences:

> After your trial, the Beauregard Parish District Attorney's Office filed habitual offender charges against you; and on February 14, 2007, you were adjudicated to be a habitual offender. At that hearing, the State established for purposes of habitual offender status that you were convicted in 1990 in this Court of felony unauthorized use of a movable,

20

that you had a valid conviction in Avoyelles Parish in 1992 for attempted crime against nature and an additional conviction in this Court in 1994 for felony mid-grade possession of stolen things.

This Court ordered and received a presentence investigation report from the Department of Probation and Parole. The PSI gives a full and vivid account of a life of criminal activity.

As a juvenile, you were arrested at least seven times, your first arrest being at age 13. You were adjudicated a juvenile delinquent on three separate occasions, twice in Vernon Parish and once in Beauregard Parish.

Your adult record reflects an additional 23 arrests resulting in five felony convictions, leading up to this case, and four misdemeanor convictions. This is your sixth felony conviction. There are pending charges in Vernon Parish at this time for aggravated incest.

You are now 36 years of age. There has been no substantial time during the last 23 years that you have not been involved in criminal activity.

I have received many letters from your family stating that you have now changed and that you have many good qualities. No doubt, your family members love you and have reason to request leniency for you. However, this Court would have to be both blind and naive not to believe that you, if left free, would constitute a serious threat to law abiding members of society. The Court, however, is not blind in that I can read the PSI, which reflects your record of criminal violations; nor am I naïve enough to believe that you have changed. This Court is convinced that absent incarceration you would continue with a life of burglary, theft, and sexual crimes against young girls.

. . . .

The Court concludes that in view of your life of crime, justice is best served by sentencing you to a lengthy period of incarceration.

Considering these reasons in light of the record, the nature of the offenses underlying these convictions, and the fact that the sentences imposed are in the lower range possible, we do not find that the sentences imposed are excessive.

Accordingly, this assignment of error is without merit.

21

## DECREE

For these reasons, the defendant's convictions and sentences are affirmed.

**AFFIRMED.**