MARION F. EDWARDS, Chief Judge.
|gThe defendant/appellant, Mike Alvarez (“Alvarez”), was charged with three counts of aggravated crime against nature upon a known juvenile, violations of La. R.S. 14:89.1.
Prior to trial, the State filed a Notice of Intent to Introduce Evidence of Similar Crimes in Sex Offense Cases Pursuant to L.C.E. Article 412.2. That notice alleged that Alvarez was convicted of carnal knowledge of a juvenile in 1997. On June 17, 2010, a twelve-person jury returned guilty verdicts as to all three counts of aggravated crime against nature. Alvarez was sentenced to a term of imprisonment of fifteen years on each count, to be served consecutively, without benefit of parole, probation, or suspension of sentence.
The State indicated that it would be filing a multiple bill, which is the subject of a separate appeal.
P.B., the victim in this matter, was fourteen years old at the time of trial. She testified that, in the summer of 2001, when she was six years old, she was living at Duke Street in Kenner with her mother, T.B., and her mother’s boyfriend, Caesar Alvarez, who is Alvarez’s brother. P.B. testified that Alvarez “made me suck his private part” three times that summer. The first time, she was in the living room when Alvarez called her and told her to come downstairs. Alvarez then told P.B. |ato get on her knees and suck his private part. P.B. complied. Alvarez also showed her a sex tape. Afterwards, he made her get on top of him and was “making me roll on him and things.” He got her off of him, and then made her “suck his thing” again. The second time, Alvarez was in the bathroom when he told P.B. to suck his private part. According to P.B., some “white stuff’ came out and Alvarez told her to spit the white stuff into the sink and wash her mouth out. The third time, P.B. was in the kitchen. P.B. told her mother about these incidents, but she did not take her to a doctor or to the police. P.B.’s mother *1082 did tell Caesar Alvarez about it. Thereafter, after P.B.’s mother lost custody of her children, P.B. told her grandmother about Alvarez’s actions.
Detective Joseph McRae, of the Kenner Police Department’s Criminal Investigations Division, testified that, in February of 2007, he was contacted by the Children’s Hospital Care Center regarding sexual abuse of P.B. P.B. was at the care center with regard to physical abuse by her mother. Detective McRae interviewed P.B. thereafter. During that interview, P.B. told Detective McRae that “Mike” made her “suck” his “ding-a-ling.” Detective McRae arranged an appointment and interview at the Jefferson Children’s Advocacy Center. P.B. identified Alvarez from a photographic line-up during the subsequent interview.
Detective McRae interviewed Alvarez after he was arrested. Detective McRae testified that, during the interview, Alvarez adamantly denied P.B.’s allegations. He also told Detective McRae that he had never been inside the Kenner residence and had only seen the children twice, once outside the residence, and once in a department store. Alvarez declined to make a recorded statement.
Erika Dupepe, a forensics interviewer with the Gretna Police Department, testified that she was stationed at the Jefferson Children’s Advocacy Center in 2007. A DVD recording of an interview with P.B. at the Center was made and | identified by Ms. Dupepe and was played for the jury. In the interview, P.B. stated that Alvarez was staying at the house she shared with her mother and Caesar Alvarez to “get back on his feet.” P.B. described how Alvarez made her “suck his private part” on three occasions. On one of the three occasions, P.B. indicated that she swallowed “white stuff,” which she promptly spit out. She tried to tell her mother and Caesar Alvarez about what had happened, but Caesar refused to believe it.
S.B., P.B.’s grandmother, testified that she has never met Alvarez before. According to S.B., in the summer of 2001, P.B. was living with her mother on Duke Street in Kenner. S.B. visited the family during that time but did not see Alvarez there. S.B. testified that she learned of the offenses “in 2000 ... No it was in '99, I believe.” She indicated that P.B. was living with her at the time of trial because P.B.’s mother had abused the children, and the children had been taken away by OCS.
J.B., P.B.’s brother, testified that he, his mother, Caesar Alvarez, and Alvarez lived on Duke Street in Kenner in 2001. According to J.B., Alvarez did not reside at the Duke Street residence but, rather, was there “from time-to-time. Every other day, he would spend the night ... sometimes, you know.” He described Alvarez’s visits as “very frequent.” J.B. testified that P.B. told him what Alvarez had done approximately one or two months after the offenses occurred.
Alvarez presented several witnesses on his behalf. Kevin Buchner, a friend, testified that he used to work with Alvarez and that, in 2001, Alvarez lived on Frenchmen Street. Mr. Buchner indicated that he saw Alvarez frequently during that time. According to Mr. Buchner, he never mentioned visiting his brother, nor was he aware of Alvarez living anywhere other than Frenchmen Street at any time during 2001.
IsBobby Marshall, III testified that he worked with Caesar Alvarez and Alvarez at a Harahan Lazy Boy store in 2004. Mr. Marshall testified that he and Alvarez “double dated” with T.B. on at least one occasion in 2004. Mr. Marshall indicated that he did not know Caesar Alvarez, Alvarez, or T.B. in 2001.
Caesar Alvarez testified that he met T.B. early in 2001 and began living with *1083 her shortly thereafter. They lived in the Duke Street residence and Alvarez “never came to my [Duke Street] house.” Caesar Alvarez further indicated that T.B. did not have any friends visit the Duke Street residence in 2001. After living with T.B. in the Duke Street residence for approximately eight months, T.B. and Caesar Alvarez moved to Frenchmen. Street at the end of 2001. According to Caesar Alvarez, the first time that T.B. met Alvarez was in 2003 or 2004 when both he and Alvarez were working at Lazy Boy. To his knowledge, P.B. never saw Alvarez at the Duke Street house.
David Alvarez, another of the Alvarez’s brothers, testified that he was living in Kenner in 2001 and had visited Caesar Alvarez. According to David Alvarez, in 2001, Alvarez was living on Frenchmen Street and did not visit him or Caesar Alvarez that summer. Alvarez’s mother, Angilista Alvarez, also testified that Alvarez lived on Frenchmen Street in 2001.
On direct examination, Alvarez testified that he had a 1997 conviction for carnal knowledge of a juvenile. At the time, he was twenty years old. Although he denied knowing the victim of the 1997 crime was under eighteen, he, nonetheless, pled guilty to that charge because he “knew I did wrong.” He further testified that, during the summer of 2001, he had two jobs and was living at an apartment at 1842 Frenchmen Street. He had to be at work early and worked late, only having two days off. Alvarez stated that he did not visit David Alvarez or Caesar Alvarez that ^summer, and he did not hang out with his brothers. According to him, the first time he saw P.B. was on the day of trial. He denied molesting her.
On appeal, Alvarez contends that the evidence used to convict him of three counts of aggravated crime against nature was legally insufficient.
Alvarez argues that the evidence was insufficient because the State did not prove the offenses occurred between June 1, 2001 and August 16, 2001 as alleged in the bill of information; that his witnesses testified he was not at the Kenner house; and that the State did not negate the hypothesis that he was misidentified.
When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, a reviewing court must first determine the sufficiency of the evidence. The constitutional standard for testing the sufficiency of evidence requires that the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.[1] When circumstantial evidence forms the basis of a conviction, La. R.S. 15:438 requires that the elements of the offense be proven so that every reasonable hypothesis of innocence is excluded.[2] “[T]he pertinent question on review [is] not whether the appellate court found that defendant’s hypothesis of innocence offered a reasonable explanation for the evidence at trial but whether jurors acted reasonably in rejecting it as a basis for acquittal.”[3] All of the evidence, both di *1084 rect and circumstantial, must be sufficient to satisfy a rational trier-of-fact that the defendant is guilty beyond a reasonable doubt.[4]
|7In order to convict a defendant of aggravated crime against nature under La. R.S. 14:89.1(A)(6), the State must prove there is a crime against nature, and the victim is under the age of seventeen and the defendant is at least three years older than the victim. The ages of the victim and Alvarez in the present case are not in dispute. Oral sex constitutes “unnatural carnal copulation,” as contemplated by La. R.S. 14:89 and R.S. 14:89.1.[5]
On appeal, Alvarez refers to S.B.’s testimony that she learned of the allegations in 1999 or 2000, before P.B. alleged they occurred. He also references the arrest register and probable cause affidavit, not admitted into evidence but discussed in Detective McRae’s testimony showing the offenses took place in 2003. However, the detective later testified that the report also indicated that P.B. was born in 1996 and was five or six at the time of the offenses.
Louisiana courts have held that the State is not required to present evidence proving the date of the offense when it is not an essential element of the crime.[6] The date on which the aggravated crime against nature occurred is not an essential element of the offense.[7] Therefore, the State was not required to prove the dates the offenses occurred. However, the evidence establishes that the offenses took place in the summer of 2001. Both P.B. and J.B. identified Alvarez and testified that he was frequently staying in the home during that period of time; P.B. testified that she was six years old at the time of the offense; and J.B. stated that she told him about it a month or two later.
 IsThe credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness.[8] Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency, and the credibility of witnesses will not be reweighed on appeal.[9] “[T]he Jackson standard does not serve as a vehicle for a reviewing court to second-guess the rational credibility determinations of the fact finder at trial.” [10]
Alvarez urges that P.B. is learning disabled and in special education, and there were discrepancies in her testimony. Alvarez also argues that the history of abuse in P.B.’s life and family impugns her testimony and gives rise to a reasonable hypothesis of innocence and that she was “possibly molested” by someone else.
It is well established that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the state fails to intro *1085 duce physical evidence to substantiate the commission of the offense.[11] P.B. testified consistently that Alvarez made her perform the acts alleged on three occasions, and positively identified him. Alvarez’s theory of “possible” molestation by an unnamed person does not present another reasonable hypothesis. The jury was presented with all of the evidence, and it apparently rejected Alvarez’s version of events.
This assignment of error is without merit.
Alvarez also contends that the trial court erred by allowing the State to admit testimony and evidence of his conviction in 1997 of carnal knowledge of a | ¡juvenile. He does not dispute that the conviction occurred; rather, he contends that, although the prior conviction fit within the definition of Carnal Knowledge of a Juvenile, “the facts of the prior crime do not fall within the parameters of sexually assaultive behavior or the definition of a crime that indicates a lustful disposition toward children” so as to be admissible under La. C.E. art. 412.2. Alvarez urges that the victim of the crime told him that she was eighteen, looked old for her age, and was able to gain access to a nightclub at the age of thirteen.
The State called T.R., the victim of the 1997 offense. She testified that she met Alvarez in a nightclub, in 1997, when she was thirteen years old. She told him she was eighteen years old, they had a sexual relationship, and nothing was forced upon her. T.R. also testified that she had been subpoenaed by the defense, rather than by the district attorney, that she had refused to testify against Alvarez “a long time ago,” and that she testified because she wanted to “clear it up.”
Alvarez did not object to this testimony at trial. To preserve the right to appellate review of an alleged trial court error, a party must state a contemporaneous objection with the occurrence of the alleged error as well as the grounds for the objection. La.C.Cr.P. art. 841(A).[12] The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity, allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant.[13] A defendant is limited to the grounds for objection that he articulated in the trial court, and a new basis for the objection may not be raised for the first time on appeal.[14]
| inSince Alvarez did not object to T.R.’s testimony at trial, this argument is not properly before us for review. We further note that Alvarez himself admitted to the prior crime on direct examination.
We have reviewed the record for errors patent and note the following:
Alvarez was charged with and convicted of La. R.S. 14:89.1, a “sex offense” as defined by La. R.S. 15:541(24). Aggravated crime against nature is considered a “sex offense,” which necessitates registration under La. R.S. 15:540, et seq. However, the trial judge did not provide written notification of the registration requirements of La. R.S. 15:542 as required by La. R.S. 15:543(A). Failure to advise a *1086 defendant convicted of a sex offense of the registration requirements of La. R.S. 15:542 warrants a remand for notification.[15]
Further, although the commitment/minute entry indicates Alvarez’s sentence was to be served at hard labor, the trial court failed to indicate that the sentences on the aggravated crime against nature convictions had to be served at hard labor as required by La. 14:89.1(B). When there is a discrepancy between the transcript and the commitment/minute entry, the transcript governs.[16] Because the judge failed to state that the time was to be served at hard labor, the sentence is illegally lenient. La.C.Cr.P. art. 882(A) states that an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. Therefore, we amend the sentence to reflect that it is to be served at hard labor without benefit of suspension of sentence, probation or parole.
| n Further, we remand the matter and order that the trial court inform Alvarez of the registration requirements of La. R.S. 15:542, by sending appropriate written notice to him within ten days of this opinion, and to file written proof in the record that he received such notice.

CONVICTION AFFIRMED; SENTENCE AMENDED; REMANDED WITH INSTRUCTIONS

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

. State v. Bellow, 08-259 (La.App. 5 Cir. 7/29/08), 993 So.2d 307, writ denied, 08-2109 (La.4/13/09), 5 So.3d 162 (citing State v. Schnyder, 06-29 (La.App. 5 Cir. 6/28/06), 937 So.2d 396).

. Id. (citing State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517, 520) (per curiam ).

. Id.

. State v. Smith, 99-0606 (La.7/6/00), 766 So.2d 501; State v. Carter, 04-482 (La.App. 5 Cir. 10/26/04), 888 So.2d 928.

. See, State v. Brown, 421 So.2d 854, 856 (La.1982); State v. S.L.D., 08-549 (La.App. 3 Cir. 11/5/08), 997 So.2d 759, writ denied, 09-0245 (La.10/30/09), 21 So.3d 272; State v. Trotter, 37,325 (La.App. 2 Cir. 8/22/03), 852 So.2d 1247, writ denied, 03-2764 (La.2/13/04), 867 So.2d 689.

. State v. Johnson, 95-1002 (La.App. 3 Cir. 3/6/96), 670 So.2d 651.

. State v. Vincent, 07-239 (La.App. 5 Cir. 12/27/07), 978 So.2d 967.

. Id.

. Id.

. Id.

. See also, State v. Enclard, 03-283 (La.App. 5 Cir. 6/19/03), 850 So.2d 845.

. State v. Browning, 06-929 (La.App. 5 Cir. 4/11/07), 956 So.2d 65 (citing State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294).

. State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589; State v. Torregano, 03-1335 (La.App. 5 Cir. 5/11/04), 875 So.2d 842.

. See, State v. Stevenson, 00-1296 (La.App. 5 Cir. 1/30/01), 778 So.2d 1165; also, State v. Lande, 06-24 (La.App. 5 Cir. 6/28/06), 934 So.2d 280, writ denied, 06-1894 (La.4/20/07), 954 So.2d 154.

. State v. Ronquille, 09-231 (La.App. 5 Cir. 11/24/09), 26 So.3d 823, writ denied, 10-0525 (La.2/25/11), 58 So.3d 455.